UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SEAN A. McKELVEY<br>    LA. DOC #217143<br>VS. | CIVIL ACTION NO. 3:12-cv-2976<br><br>SECTION P<br><br>JUDGE ROBERT G. JAMES |
| WYDET WILLIAMS, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Sean A. McKelvey filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on November 27, 2012. Plaintiff, who is no longer incarcerated, complains that he was denied appropriate medical care during the period he was in the custody of Louisiana's Department of Corrections (LDOC) and incarcerated at the Riverbend Detention Center (RDC) from May 2011until his release from custody on November 23, 2012. He sued various corrections officials with the LDOC and RDC praying for monetary damages and injunctive relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Background*

Sometime in 2008, plaintiff was diagnosed with coronary artery blockage by a

cardiologist. Two stents were installed. Plaintiff was prescribed Simvastatin,[1] Plavix,[2] Lisinopril,[3] Isosorbide,[4] Carvedilol,[5] and Aspirin[6] by his cardiologist, and Uroxatral[7] by his

---

[1] Simvastatin is used together with diet, weight-loss, and exercise to reduce the amount of fatty substances such as low-density lipoprotein (LDL) cholesterol and triglycerides in the blood and to increase the amount of high-density lipoprotein (HDL) cholesterol in the blood. Simvastatin is also used to decrease the risk of heart attacks, strokes, and death, and to decrease the need for surgery to improve blood flow in people who have medical conditions that put them at high risk of developing heart and blood vessel problems. Simvastatin is in a class of medications called HMG-CoA reductase inhibitors (statins). It works by slowing the production of cholesterol in the body to decrease the amount of cholesterol that may build up on the walls of the arteries and block blood flow to the heart, brain, and other parts of the body. Medline Plus, A service of the U.S. National Library of Medicine and National Institutes of Health, Drugs & Supplements at http://www.nlm.nih.gov/medlineplus/druginformation.html

[2] Plavix or clopidogrel is used to prevent strokes and heart attacks in patients at risk for these problems. Clopidogrel is in a class of medications called antiplatelet drugs. It works by helping to prevent harmful blood clots that may cause heart attacks or strokes. Id.

[3] Lisinopril is used alone or in combination with other medications to treat high blood pressure. It is used in combination with other medications to treat heart failure. Lisinopril is also used to improve survival after a heart attack. Lisinopril is in a class of medications called angiotensin-converting enzyme (ACE) inhibitors. It works by decreasing certain chemicals that tighten the blood vessels, so blood flows more smoothly and the heart can pump blood more efficiently. Id.

[4] Isosorbide is used to prevent or treat chest pain (angina). It works by relaxing the blood vessels to the heart, so the blood and oxygen supply to the heart is increased. Id.

[5] Carvedilol is used to treat heart failure (condition in which the heart cannot pump enough blood to all parts of the body) and high blood pressure. It also is used to treat people whose hearts cannot pump blood well as a result of a heart attack. Carvedilol is often used in combination with other medications. Carvedilol is in a class of medications called beta-blockers. It works by relaxing blood vessels and slowing heart rate to improve blood flow and decrease blood pressure. Id.

[6] Nonprescription aspirin is used to reduce fever and to relieve mild to moderate pain from headaches, menstrual periods, arthritis, colds, toothaches, and muscle aches. Nonprescription aspirin is also used to prevent heart attacks in people who have had a heart attack in the past or who have angina (chest pain that occurs when the heart does not get enough oxygen). Nonprescription aspirin is also used to reduce the risk of death in people who are experiencing or who have recently experienced a heart attack. Nonprescription aspirin is also

urologist.

On February 17, 2010, he was arrested on some unspecified charges; on April 20, 2011, he was convicted and sentenced. He was placed in the custody of the LDOC, and sometime in May 2011, he was incarcerated at the RDC and thereafter his "... medications have been deceived [sic] causing [him] chest pains, shortness of breath, dizziness, stress and atypical hardships." On September 14, 2012, defendant Mills informed him that there was no prescription refill for the Simvastatin. She refused to acquire plaintiff's medical records from the hospitals and health care providers who treated him prior to his incarceration.

In an administrative remedy grievance filed on September 21, 2012, approximately two months prior to his release from custody, plaintiff alleged, "I am a D.O.C. prisoner where DOC Secretary James LeBlanc and RBDC Warden Jones are responsible for providing me adequate medical attention; however Shanna Mills, Dr. B. Bailey and others have deceived [sic] prescribed medical treatment to a dimension of medical neglect (State Tort) and deliberate indifference (Federal, USCA Eight).  Additionally, without medical records or information for RBDC medical staff (doctor, etc.) to justify a belief to deny my medications, constitutes an action of medical malpractice; and, therefore I am referring this matter to the Medical Review Panel (M.R.P.) In

---

used to prevent ischemic strokes (strokes that occur when a blood clot blocks the flow of blood to the brain) or mini-strokes (strokes that occur when the flow of blood to the brain is blocked for a short time) in people who have had this type of stroke or mini-stroke in the past. Aspirin will not prevent hemorrhagic strokes (strokes caused by bleeding in the brain). Aspirin is in a group of medications called salicylates. It works by stopping the production of certain natural substances that cause fever, pain, swelling, and blood clots. Id.

[7] Uroxotral or alfuzosin is used in men to treat symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH), which include difficulty urinating, painful urination, and urinary frequency and urgency. Alfuzosin is in a class of medications called alpha blockers. It works by relaxing the muscles in the prostate and bladder to allow urine to flow more easily.

Baton Rouge for intervention. Relief: (1) Prove Nitro Glysorin and other meds; (2) Acquire all medical records; and (3) No reprisal or retaliation." [Doc. 1-2, p. 2]

In his complaint plaintiff alleged that Nurse Mills and Dr. Bailey "refused to refill heart medications without first acquiring the medical records to warrant or otherwise justify their actions of denying me the medications. Interfering with my prescribed medical treatment cause suffering and damages my life threatening conditions... Defendants LeBlanc and Jones were aware of similar acts of deliberate indifference /denial of medications occurring at Riverbend because of other similar ARP's filed by others to which defendants failed to intervene or implement an adequate and competent medical department/staff." [Doc. 1, ¶IV]

As noted above, plaintiff seeks injunctions – (1) ordering Bailey and Mills to refrain from denying his medication without first obtaining plaintiff's medical records; and (2) ordering LeBlanc and Jones to refrain from failing to provide a competent medical staff and respond to ARP's.  He also prayed for a declaratory judgment and compensatory damages for the medical costs for unspecified complications resulting from the denial of medication along with an unspecified amount of punitive damages.

### *Law and Analysis*

*1. Screening*

When an individual is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2). *Ali v. Higgs*, 892 F.2d 438,

440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual

allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's complaint, while short on factual support, adequately sets forth his claim for relief; further amendment is not necessary.

## 2. Medical Care

The gravamen of plaintiff's complaint is that the defendants did not provide the same therapeutic regimen ordered by his treating physician in 2008. During the period in question, plaintiff was an inmate in the custody of the LDOC. The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756

(5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff was treated by a physician, Dr. Bailey, throughout the time he was incarcerated. Dr. Bailey evidently made certain treatment choices. However, plaintiff disagreed with Dr. Bailey's treatment choices. Plaintiff's disagreement with Dr. Bailey's treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, plaintiff's pleadings suggest at worst that the defendants were negligent or guilty of medical malpractice at worst. Deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed,</u> <u>and that they drew that</u> inference. *Id.* at 837.

In short, plaintiff's failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint as frivolous and for failing to state a claim for which relief may be granted.

*3. Mootness*

In addition to his prayer for damages, plaintiff also prayed for prospective injunctive relief – an order directing the defendants to provide appropriate medical care. Plaintiff, however, was released from custody prior to the date this complaint was filed. With regard to his desire to obtain medical care, the defendants no longer exercise authority over him. The transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir.2001) (holding that transfer from unit rendered a prisoner's claims for declaratory and injunctive relief moot).

Since plaintiff is no longer in custody or incarcerated, and since he is no longer under the authority of the defendants, his claims for injunctive relief are moot and subject to dismissal for failing to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint [Doc. 1] be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved

by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, January 23, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE